UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| OHIO VALLEY ALUMINUM COMPANY, LLC, ) ) | |
| ) | Case: 3:17-cv-00051-GFVT |
| Plaintiff, ) | |
| ) | |
| V. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| HYDRATECH INDUSTRIES US, INC., ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendant's Motion to Compel Arbitration and Stay Proceedings. [R. 5.] By way of this motion, the Defendant asks the Court to compel the Plaintiff, Ohio Valley Aluminum Company, to arbitrate all of its claims. [*See id.*] After reviewing the parties' arguments and the relevant case law, the Court **GRANTS** the Defendant's Motion.

**I**

Plaintiff Ohio Valley Aluminum Company (Ovaco) "is an aluminum billet manufacturer with its principal place of business in Shelby County, Kentucky." [R. 7 at 2.] Defendant Hydratech Industries manufactures hydraulic casting cylinders in Alabama and is headquartered in Vraa, Denmark. [*See* R. 5-1 at 1.] This case arises out of two quotes provided by Hydratech to Ovacao and a purchase agreement between Hydratech and Ovaco. [*See* R. 1-5; R. 1-6; R. 1-7.]

Hydratech Industries entered into an agreement with Ohio Valley Aluminum Company to "FABRICATE NEW CASTING CYLINDERS AS PER QUOTE 11251" in November 2015.

[R. 1-6 at 1.] Quote 11251 was requested by Dale Simpson of Ovaco per an email thread. [*See* R. 7-1.] Of significance in the current matter, Quote 11251 also states, "Offer Subject To Hydratech Global Terms & Conditions." Ovaco now alleges those casting cylinders were defective and brings this suit to recover their losses. [7 at 2.]

Curiously, parties have submitted copies of the email chain at issue and they differ in one significant respect. In the email attached to Defendant's Response, there appears to be no attachment included in the June 18, 2015, email per the email header. [[R. 7-1 at 76.] However the email reads, "Please find the attached quote for your consideration." [R. 7-1 at 76.] Plaintiffs have submitted the same email, which does list the attachments included in the email, "Attachments: Quote 11156.pdf; Hydratech Global Terms Conditions R2.pdf." [R. 8-2 at 1.]

Hydratech has provided a copy of the "General Terms & Conditions of Tender & Sale," which contains the arbitration clause at issue here. It reads in relevant part:

> Purchaser and Vendor consent and agree that all disputes, claims or controversies arising out of, relating to or in connection with this Agreement or the breach thereof shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce ('ICC') by one or more arbitrators appointed in accordance with the said rules. The place of the arbitration shall be Copenhagen, and the language of the arbitration shall be English.

[R. 1-5 at 2.]

## II

### A

The Federal Arbitration Act (FAA) provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In other words, whether an arbitration clause is enforceable is governed by state law." *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006). "The FAA preempts state law regarding arbitration, but state contract law

2

governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005). The FAA provides a "liberal federal policy favoring arbitration agreements" and "is at bottom a policy guaranteeing the enforcement of private contractual arrangements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "[A]bsent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, a court must enforce a contractual agreement to arbitrate." *Haskins v. Prudential Ins. Co. of America*, 230 F.3d 231 (6th Cir.2000) (overruled on other grounds).

Though Ovaco makes several pages of argument as to why Kentucky law should apply as the formation of the arbitration agreement, they do not actually cite any Kentucky law in their argument. [*See* R. 7 at 10-14.] In their argument section, they state, "the arbitration clause does not contain all essential elements, e.g., provision for responsibility for costs of an arbitration. These things show that there was no meeting of the minds on the same full and complete terms as is required for a valid and enforceable contract under Kentucky law." [R. 7 at 10.] However, they do not identify or cite supporting law for either the arbitration elements they claim are missing or Kentucky state law on meeting of the minds and this Court cannot guess as to what they mean.

The only detailed argument Plaintiffs make is that the Terms & Conditions were not attached to the email that contained the quote in question. This argument is not compelling. Kentucky state law holds that, "[t]erms and conditions incorporated by reference are enforceable." *Home Lumber Co. v. Appalachian Reg'l Hosps., Inc.*, 722 S.W.2d 912, 914 (Ky.

Ct. App. 1987). And, "[a] contract may validly incorporate by reference a separate and noncontemporaneous document." *Howson v. JP Morgan Chase Bank, N.A.*, No. 2012-CA-001217-MR, 2013 WL 4779851, at *3 (Ky. Ct. App. Sept. 6, 2013).

"Ovaco does not dispute that there was a contract between it and Hydratech for the purchase and sale of the cylinder," and does not dispute the validity of the quotes or purchase agreement. [R. 7 at 6.] Though Ovaco claims that a separate document containing the Terms & Conditions was not attached to the email containing Quote 11251, Ovaco does not dispute that Quote 11251 states "Offer Subject To Hydratech Global Terms & Conditions." [R. 8-2 at 2; R. 7-1 at 8, 9.] Instead, Ovaco makes various semantic, and unconvincing, arguments, such as arguing about the title of the Terms & Conditions. Whether the Terms & Conditions are the **General** Terms & Conditions or the **Global** Terms & Conditions [*see* R. 7 at 1], Terms & Conditions were referenced in the quote that Ovaco received and incorporated by reference. *See Howson v. JP Morgan Chase Bank, N.A.*, No. 2012-CA-001217-MR, 2013 WL 4779851, at *3 (Ky. Ct. App. Sept. 6, 2013). Kentucky law does not require that the Terms & Conditions be contemporaneous nevertheless. *See id.* Accordingly, the arbitration agreement will not be invalided as Quote 11251 incorporated Terms & Conditions by reference.

**B**

Plaintiff makes one last argument in their response, that, even if this Court upholds the arbitration agreement, it should be invalidated based on "arbitration of this dispute in Copenhagen, Denmark would be so extremely burdensome and expensive that the Court should not compel arbitration in that place." [R. 7 at 13.]

Plaintiff relies on *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000), which is distinguished in *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 346 (6th Cir. 2006).

Though the Sixth Circuit has twice invalidated arbitration agreements due to potential excessive arbitration costs, *see Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir. 2004) and *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003), the Sixth Circuit has explicitly stated that these cases "are limited by their plain language to the question of whether an arbitration clause is enforceable where federal statutorily provided rights are affected. In this case, no federally protected interest is at stake." *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 346 (6th Cir. 2006).

Though not entirely clear, it's possible Plaintiff is making an argument based on unconscionability. "An unconscionable contract has been characterized as 'one which no man in his senses, not under delusion, would make, on one hand, and which no fair and honest man would accept, on the other.'" *Mortg. Elec. Registration Sys., Inc. v. Abner*, 260 S.W.3d 351, 354 (Ky. Ct. App. 2008). The doctrine of unconscionability is a narrow exception to contract law and is "used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Mortg. Elec. Registration Sys., Inc. v. Abner*, 260 S.W.3d 351, 354 (Ky. Ct. App. 2008) (internal citations omitted).

Further, Kentucky courts have noted the difference in a contract "in which the parties have disparate bargaining power and a contract which voluntarily has been entered into by sophisticated and knowledgeable businessmen concerning a financial transaction of considerable magnitude." *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co.*, 983 S.W.2d 501, 504 (Ky. 1998). Kentucky courts have likewise declined to strike down an arbitration provision due to high costs or remote location of arbitration due to "impracticality," as impracticality alone "is

5

not regarded as an impediment to vindicating one's rights." *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 573 (Ky. 2012).

Ovaco claims they "would have to bear or pay at least the costs of travel to and lodging in Copenhagen for an attorney and a party representative; the fees of the attorney; the unknown costs and fees of the arbitration tribunal and arbitrator(s); and the time lost from business." [R. 7 at 13.] They provide no estimate of these costs and this Court finds it significant that each of these costs would be incurred regardless of where the arbitration took place, save only travel to and lodging if the arbitration were held in Shelbyville, which Plaintiffs knew would not occur based on the fact the parts they ordered came from Alabama. It seems that the only additional large cost is a plane ticket to Copenhagen, which, compared to the $75,000 they are seeking to recover, seems insignificant.

Further, if this Court ordered arbitration in Shelbyville, Kentucky, Defendant would have to travel from Copenhagen for the arbitration, as their legal department is stationed there. This contract is not unconscionable. These parties are "sophisticated and knowledgeable businessmen [who have entered into] a financial transaction of considerable magnitude." *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co.*, 983 S.W.2d 501, 504 (Ky. 1998). An arbitration agreement that mandates arbitration in the location where a company is headquartered is not "one which no man in his senses, not under delusion, would make, on one hand, and which no fair and honest man would accept, on the other.'" *Mortg. Elec. Registration Sys., Inc. v. Abner*, 260 S.W.3d 351, 354 (Ky. Ct. App. 2008). Rather, this seems to be a "simple old-fashioned bad bargain." *Mortg. Elec. Registration Sys., Inc. v. Abner*, 260 S.W.3d 351, 354 (Ky. Ct. App. 2008).

As Ovaco entered the contract as sophisticated businesspeople and the contract is not unconscionable, Ovaco cannot escape the arbitration clause based on the prospect of excessive costs of traveling to Copenhagen. In fact, to hold otherwise would require the Hydratech to incur the costs Ovaco seeks to avoid.

C

Finally, having determined that Ovaco's claims are subject to arbitration, the Court must decide whether to dismiss or stay the case. The FAA contemplates a stay of proceedings in federal court, as opposed to dismissal of the action, until the arbitration has occurred in accordance with the terms of the agreement. See 9 U.S.C. § 3. Nonetheless, "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). Addressing the same issue, the Fifth Circuit, in *Alford v. Dean Witter Reynolds Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992), reasoned:

> Although we understand the plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication on the merits of the controversy but would be circumscribed to judicial review of the arbitrator's award in the limited manner prescribed by law.

Here, just as in *Alford*, all issues are arbitrable. Retaining jurisdiction and staying the action will serve no meaningful purpose. Therefore, because all of Plaintiff's claims are subject to arbitration, the Court dismisses this case and compels arbitration.

7

**III**

Accordingly, it is hereby **ORDERED** as follows:

1. The Defendant's Motion to Compel Arbitration and Stay Proceedings **[R. 5]** is **GRANTED** insofar as it seeks to compel arbitration; and

2. This Action **DISMISSED WITHOUT PREJUDICE** pending arbitration and stricken from the Court's active docket.

This the 29th day of March, 2018.

Gregory F. Van Tatenhove
United States District Judge